NOT FOR PUBLICATION (Doc. No. 10)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
Jerrilyn MANFRE, :
 :
 Plaintiff, : Civil No. 14-7680 (RBK)
 :
 v. : **OPINION**
 :
COMMISSIONER OF SOCIAL :
SECURITY, :
 :
 Defendant. :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Jerrilyn Manfre for review of the final determination of the Commissioner of Social Security ("Commissioner"). The Commissioner denied her application for Social Security Disability Insurance ("SSDI") benefits under Title XVI of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

I.   BACKGROUND

On December 16, 2010, Ms. Manfre filed a claim for SSDI benefits because of migraine headaches and depression. The relevant time period is from February 28, 2007 to December 31, 2008, the last date that Ms. Manfre was insured. The Commissioner denied Ms. Manfre's claim on May 9, 2011. Ms. Manfre requested a hearing before an administrative law judge ("ALJ"), and the hearing was held on November 8, 2012. On February 6, 2013, ALJ Joseph M. Hillegas decided that Ms. Manfre could not receive SSDI benefits. The Appeals Council denied Ms.

Manfre's request for review on October 14, 2014, and the ALJ's determination became the final decision of the Commissioner. Ms. Manfre filed a complaint in this Court on April 28, 2015.

### A. Ms. Manfre's Alleged Impairments

Ms. Manfre alleged that her headaches originated after a car accident that occurred in 1990. Pl. Br. at 3. She worked as a nursing assistant from 2005 to 2007, but she stopped due to her headaches. *Id.* at 2. Prior to December 2007, Ms. Manfre used Tylenol ES or Aleve on a daily basis to treat her headaches. Administrative Record ("Rec.") at 47. Additionally, Ms. Manfre testified that she took Paxil and Depakote in 1999, and she was hospitalized for depression in 2007.[1] *Id.* However, there is nothing else in Ms. Manfre's medical records to support that her symptoms from depression were severe during the relevant time period.

Dr. Loretta Mueller summarized Ms. Manfre's condition, and stated that she suffered from migraines and sinus headaches. *Id.* In 2008, Dr. Mueller saw Ms. Manfre four times, during which time Ms. Manfre experienced some relief from her headaches. *Id.* Dr. Mueller prescribed Pamelor and Maxalt to help Ms. Manfre's migraines.[2] *Id.* Throughout 2008, Ms. Manfre told Dr. Mueller that her condition improved, and in March 2008 she described herself as "functional." *Id.* Ms. Manfre apparently felt well enough to return to work in 2008.[3] Pl. Br. at 2. However, in November 2008, Ms. Manfre's more severe headaches returned, and reached a level that required her to rest in bed all day. Rec. at 48.

---

[1] Paxil and Depakote are mood-stabilizing drugs prescribed to people who suffer from depression and other neurological conditions.
[2] Pamelor is taken daily as a prophylactic and Maxalt is taken as needed for symptom relief.
[3] Ms. Manfre reported earnings of $2,872.69 in 2007 and $3,676.32 in 2008.

2

### B. The Administrative Law Judge's Decision

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine if Ms. Manfre was disabled. *See* 20 C.F.R. § 404.1520. For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. *See* 20 C.F.R. § 404.1520(a)(4)(i) (explaining the first step); 20 C.F.R. § 404.1572 (defining "substantial gainful activity"). Second, the claimant must demonstrate that she had a "severe medically determinable physical or mental impairment" that lasted for a continuous period of at least 12 months. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (explaining the second step); 20 C.F.R. § 404.1509 (setting forth the duration requirement). Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and therefore she is disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1520(a)(4)(iii) (explaining the third step). *See also* 20 C.F.R. Pt. 404, Subpt. P., App. 1. Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's residual function capacity ("RFC").[4] 20 C.F.R. § 404.1520(a)(4)(iv) (explaining the fourth step); 20 C.F.R. § 404.1520(e) (same). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at

---

[4] A claimant's RFC is used to determine if the claimant can return to her past work, but also to measure "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing, based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v) (explaining the fifth step). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

First, the ALJ determined that Ms. Manfre was not engaged in substantial gainful activity during the relevant time period. Second, the ALJ determined that Ms. Manfre was severely impaired by depression and migraine headaches, but not impaired due to other ailments. Third, the ALJ determined that Ms. Manfre's ailments did not meet or equal one of the Commissioner's listed impairments.

Because Ms. Manfre failed to demonstrate that her impairment was one of the listed impairments, the ALJ proceeded to the fourth and fifth steps of the evaluation process. Although the ALJ determined that Ms. Manfre could not return to her past work, he found that she was capable of performing the full range of unskilled, light-work jobs. The ALJ identified approximately 1,600 different jobs classified as sedentary or light unskilled occupations. Rec. at 55. Each of these occupations represented several jobs in the national economy. *Id.* The ALJ decided that the Commissioner had met its burden of establishing the existence of other work that Ms. Manfre could perform. *Id.* Due to this final determination, the ALJ decided that Ms. Manfre was not suffering from a disability during the relevant time period. *Id.*

## II.     STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). The often-used quotation for the standard is that substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

### III.   DISCUSSION

The ALJ determined that Ms. Manfre was not disabled within the meaning of the Social Security Act at any point during the relevant time period, and thus that she was not entitled to SSDI benefits. This Court finds that substantial evidence supports the Commissioner's denial of Ms. Manfre's SSDI benefits. Accordingly, the Commissioner's decision is affirmed.

**A. The ALJ was not required by SSR 83–20 to call a medical advisor.**

Social Security Rule 83–20 does not require the ALJ to hear testimony from a medical advisor. The purpose of this SSR is "[t]o state the policy and describe the relevant evidence to be considered when establishing the onset date of disability." SSR 83–20. This SSR concerns what the ALJ must do to determine the onset date of a claimant's disability, not whether a disability exists. *Zirnsak*, 777 F.3d at 612. The claimant has the burden of proving that she is disabled. *Id.* However, Ms. Manfre claims that the ALJ erred by not calling a medical expert "to assist in determining the onset of Ms. Manfre's severe headaches." Pl. Br. at 8.

In cases of slowly developing impairments "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." SSR 83–20. This determination does not require an ALJ to call a medical expert. Contrary to Ms. Manfre's assertions, an ALJ must consult with a medical advisor pursuant to SSR 83–20 only when a claimant's medical history is not definite concerning the onset date of her disability, and adequate medical records for the relevant time period are not available. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 n.7 (3d Cir. 2003).

The ALJ had access to Ms. Manfre's medical records, and Ms. Manfre went to the doctor four times in 2008. The ALJ had enough evidentiary support to make a reasonable inference as to the onset date of the disability. *See Jakubowski v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 104, 107–08 (3d Cir. 2007) (stating that the ALJ had access to adequate medical records, and therefore could make a reasonable inference regarding the onset date of the claimant's disability without consulting a medical advisor). As such, the ALJ was not required to call a medical advisor to determine the onset date of Ms. Manfre's impairments.

### B.  Social Security Ruling 83–20 does not require the ALJ to credit lay testimony.

The ALJ considered Ms. Manfre's testimony, weighed it against her medical records and other evidence, and decided that she was not disabled during the relevant time period. The ALJ's determination is supported by substantial evidence on the record. The ALJ conducted a thorough analysis of Ms. Manfre's medical history after the relevant time period. Rec. at 48–51. He noted medical records up to four years beyond the relevant time period. *Id.* The ALJ was aware that the severity of Ms. Manfre's migraines, headaches, and other maladies increased after 2009.

However, substantial evidence supports the ALJ's conclusion that Ms. Manfre was not disabled during the relevant time period. Notably, Ms. Manfre told her doctor that her headaches were improving in March of 2008 and that she no longer experienced them on a daily basis. *Id* at 47. She stated on April 29, 2008 that she experienced two migraines in the last two months. *Id.* at 48. Additionally, Ms. Manfre did not refill her Maxalt prescription after January 2008, and she worked for a time period during 2008. *Id.* at 52. The ALJ addressed the lay testimony of Ms. Manfre and the evidence of her doctors both during and after the relevant time period. As such, the ALJ's determination that Ms. Manfre was not disabled is supported by substantial evidence.

### C.  The ALJ's RFC assessment is supported by substantial evidence.

The ALJ reasonably determined that Ms. Manfre had the RFC to perform unskilled, light work. Unskilled, light work requires a person to understand and perform simple instructions, appropriately respond to supervision and usual work situations, and cope with routine changes in her work setting. SSR 85–15, at *4. An ALJ should base determinations of the claimant's RFC on acceptable medical sources, and should describe the claimant's ability to perform physical and mental work-related activities. 20 C.F.R. § 404.1513(c). The ALJ should conduct an independent analysis of the evidentiary record and make a determination on that basis. SSR 96–

8p, at *2. The ALJ, not the treating or examining physicians, makes the final RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

The ALJ's determination is based on how much the impairments reduced the claimant's ability to perform work. SSR 96–8p, at *2. Ms. Manfre's impairments during the relevant time period were migraines and depression. Rec. at 42. The ALJ concluded that Ms. Manfre could still perform the full range of unskilled, light work as defined by 20 C.F.R. § 404.1567(b). The ALJ found it significant that, during the relevant time period, Ms. Manfre stated that her headaches were improving. Rec. at 47. Ms. Manfre testified that Maxalt relieved her symptoms, but she did not refill her her Maxalt prescription during the majority of 2008. *Id.* at 52. Dr. Mueller first examined Ms. Manfre in regards to her depression in December 2007. Nevertheless, between that first diagnosis and November 23, 2010 when she again met with Dr. Mueller, nothing in Ms. Manfre's medical history shows that her depression significantly limited her RFC. *Id.* at 53. By April 2008, Ms. Manfre experienced two migraines in two months. *Id.* at 52. She also noted that her headaches were better in 2007 than they were in 2006, a year in which her income was over the substantial gainful activity threshold. *Id.* The ALJ evaluated her doctors' notes, prescription history, and her own testimony. The ALJ's determinations regarding Ms. Manfre's impairments and RFC are supported by substantial evidence.

### D.  The ALJ properly evaluated Ms. Manfre's credibility.

Normally, a reviewing court should defer to the ALJ's credibility determinations. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). When developing support for his determination, an ALJ should state why some evidence was accepted and some was rejected. *Id.* An ALJ may discount a claimant's testimony if it is inconsistent with other evidence. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Here, the ALJ fully developed his rationale for

rejecting Ms. Manfre's testimony. The ALJ thoroughly analyzed all of Ms. Manfre's medical records. He demonstrated how other evidence did not support her testimony regarding the severity of her migraines. As such, this Court defers to the ALJ's evaluation of Ms. Manfre's credibility.

### E. The ALJ properly determined that other jobs existed in the national economy that Ms. Manfre could perform.

The ALJ properly relied on the medical-vocational grids to determine that Ms. Manfre could perform jobs that existed in the national economy. Grids are rules that "reflect major functional and vocational patterns." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). The grids help an ALJ determine if the claimant is disabled through an analysis of the vocational factors and the claimant's RFC. *Id.*; 20 C.F.R. § 416.969. At the time Ms. Manfre was last insured, she was 46 years old. Rec. at 54. For the purposes of the grids, that age classifies her as a "younger individual." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1). She also had a high school education. Rec. at 54. The ALJ determined that Ms. Manfre was capable of performing the full range of unskilled, light work. *Id.* The application of these findings to the grids led to the ALJ's conclusion that Ms. Manfre was not disabled during the relevant time period. *Id.* at 55.

Additionally, the ALJ did not need to hear testimony from a vocational expert. The ALJ should consult a vocational expert when a claimant's non-exertional symptoms erode the occupational base of available jobs. *Sykes v. Apfel*, 228 F.3d 259, 267 (3d Cir. 2000). When there is a "fit" between "the facts of a given case and the way in which an SSR dictates that an individual's non-exertional limitations impact upon her occupational base[,]" vocational testimony is unnecessary. *Guerrero v. Comm'r of Soc. Sec.*, 249 Fed. App'x. 289, 293 (3d Cir. 2007). When a person's mental impairment prevents her from returning to past work, "the final consideration is whether that person can be expected to perform unskilled work." SSR 85–15, at

*4. The grids in Appendix 2 specifically take notice of the number of unskilled jobs in each exertional category. SSR 96–9p, at *2.

The ALJ's reliance on the grids and decision to not hear testimony from a vocational expert were appropriate. The ALJ determined that Ms. Manfre was capable of performing the "full range of unskilled, light work." Unskilled work requires a person to remember, understand, and carry out simple instructions, make basic judgments according to one's tasks, and to respond appropriately in the work setting. SSR 85–15, at *4. The severity, not the existence, of Ms. Manfre's headaches, migraines, and depression symptoms was the focus of the ALJ's decision. The ALJ concluded that Ms. Manfre's non-exertional symptoms did not prevent her from remembering and understanding simple instructions or making basic judgments, or restrict her from acting appropriately a work setting. There was substantial evidence to support this conclusion, and that evidence disposed of the need for a vocational expert's testimony.

## IV.  CONCLUSION

For the reasons discussed above, the decision of the Commissioner is **AFFIRMED**.


Dated:  09/22/2015                                                                          s/ Robert B. Kugler
                                                                                            ROBERT B KUGLER
                                                                                            United States District Judge